UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Charles Smith,

                        Petitioner,

          -against-

Superintendent Bell,

                        Respondent.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
21-CV-03570 (DG)

DIANE GUJARATI, United States District Judge:

On May 19, 2021, *pro se* Petitioner Charles Smith, then incarcerated at Clinton Correctional Facility in Dannemora, New York, filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254, in the United States District Court for the Northern District of New York. *See* Petition ("Pet."), ECF No. 1.[1] Subsequently, by Order of United States District Judge Brenda K. Sannes of the United States District Court for the Northern District of New York, this case was transferred to the United States District Court for the Eastern District of New York. *See* Transfer Order, ECF No. 7.

Petitioner challenges his 2013 conviction for attempted robbery in the first degree. *See* Pet. at 1; *see also People v. Smith*, 124 A.D.3d 918 (2d Dep't 2015), *aff'd*, 29 N.Y.3d 91 (2017).

---

[1] Under the "prison mailbox rule," the operative filing date is the date on which the Petition was delivered to prison officials for forwarding to the Court. *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001). The record reflects that the Petition is dated May 19, 2021, the postmark on the envelope is dated May 24, 2021, and the Petition was docketed on May 26, 2021, but the record does not reflect the date on which the Petition was delivered to prison officials. The Court herein refers to the earliest of the three dates as the filing date. Whether the Petition was filed on May 19, 2021, on May 24, 2021, or on May 26, 2021 does not affect the Court's analysis.

For Petitioner's and Respondent's filings, when referring to page numbers, the Court refers to the page numbers generated by the Court's electronic case filing system ("ECF").

Petitioner asserts due process and ineffective assistance of counsel claims, asserts that he has been retaliated against by prison authorities by being held in "prison segregation since 2017 without a misbehavior report," and asserts that the state court that denied Petitioner's motion made pursuant to New York Criminal Procedure Law Section 440.20 ("440.20 motion") erred in doing so based on "a law that was not yet in law books." *See* Pet. at 4-5.

Pending before the Court is Respondent's Motion to Dismiss the Petition as untimely. *See* Respondent's Declaration in Support of Motion to Dismiss ("Respondent's Decl."), ECF No. 13;[2] Respondent's Memorandum of Law, ECF No. 13-1. Petitioner opposes Respondent's motion. *See* Traverse, ECF No. 15; *see also* ECF Nos. 17, 18.[3] As set forth more fully below, the Petition was not filed within the applicable one-year statute of limitations provided by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and Petitioner is not entitled to statutory or equitable tolling. Accordingly, the Petition must be dismissed.

## BACKGROUND

In 2013, Petitioner Charles Smith was sentenced to an indeterminate prison term of sixteen years to life after being convicted at trial of attempted robbery in the first degree. *See People v. Smith*, 180 A.D.3d 1075 (2d Dep't 2020); Pet. at. 1; Respondent's Decl. ¶ 2. Petitioner appealed his conviction and, on January 28, 2015, the Supreme Court of the State of New York, Appellate Division, Second Department (the "Second Department") affirmed the conviction. *See Smith*, 124 A.D.3d at 918; *see also* Pet. at 2; Respondent's Decl. ¶ 3. The New York State Court

---

[2]  ECF No. 13 is comprised of a Declaration and various Exhibits thereto. Citations to the Declaration itself are to specific paragraphs; citations to the Exhibits are to the page numbers generated by ECF.

[3]  After filing the Traverse, Petitioner filed two letters – which the Court received on March 10, 2022 and March 16, 2022, respectively. *See* ECF Nos. 17, 18. As discussed more fully below, the Court has considered the arguments raised in Petitioner's letters.

of Appeals (the "Court of Appeals") granted Petitioner leave to appeal and, on March 28, 2017, affirmed the conviction. *See Smith*, 29 N.Y.3d at 94, 102; *see also* Pet. at 2; Respondent's Decl. ¶ 3. Petitioner did not file a petition for a writ of certiorari seeking review in the United States Supreme Court. *See* Pet. at 2; Respondent's Decl. ¶ 3.

On July 24, 2018, Petitioner filed a counseled 440.20 motion to set aside his sentence. *See Smith*, 180 A.D.3d at 1075-76; Pet. at 2-3;[4] Respondent's Decl. ¶ 4; Respondent's Decl. at 8-82. Petitioner sought to set aside his sentence on the basis that it was an illegal sentence and that his counsel was ineffective in failing to argue the illegality of the sentence. More specifically, Petitioner argued that he was erroneously adjudicated a persistent violent felony offender as a result of a 2001 conviction and that his counsel failed to challenge that designation in connection with his 2013 sentence. *See* Pet. at 2-4; Respondent's Decl. ¶ 4. The Supreme Court of the State of New York, Queens County denied Petitioner's 440.20 motion on August 24, 2018. *See Smith*, 180 A.D.3d at 1075-76; *see also* Pet. at 3; Respondent's Decl. ¶ 5; Respondent's Decl. at 85-91. Petitioner was granted leave to appeal the denial of his 440.20 motion and, on February 26, 2020, the Second Department affirmed the order denying Petitioner's 440.20 motion. *See Smith*, 180 A.D.3d at 1075; *see also* Respondent's Decl. ¶ 6; Respondent's Decl. at 93; Pet. at 3. Leave to appeal that decision to the Court of Appeals was denied on May 29, 2020. *See People v. Smith*, 35 N.Y.3d 995 (2020); *see also* Respondent's Decl. ¶ 6; Respondent's Decl. at 93.

On May 19, 2021, Petitioner filed the instant Petition for Writ of Habeas Corpus in the

---

[4] Although the Petition suggests that Petitioner filed two 440.20 motions, *see* Pet. at 2-3, the record only reflects one such motion.

3

United States District Court for the Northern District of New York. *See* Pet.[5] On June 24, 2021, by Order of United States District Judge Brenda K. Sannes, this case was transferred to the United States District Court for the Eastern District of New York. *See* Transfer Order. On October 22, 2021, Respondent moved to dismiss the Petition as untimely, pursuant to 28 U.S.C. § 2244(d) ("Section 2244(d)"). *See* Respondent's Decl. ¶ 1. On November 8, 2021, Petitioner filed a Traverse opposing Respondent's motion. *See* Traverse.

## DISCUSSION

### I. Applicable Statutory Provisions and Equitable Doctrines

#### A. Statute of Limitations

AEDPA provides in relevant part:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

---

[5] When Petitioner filed the Petition in the United States District Court for the Northern District of New York on May 19, 2021, Petitioner included a one-sentence letter dated April 3, 2017, "requesting for the court to toll or freeze [his] time clock concerning [his] one year statute of limitation on [his] federal habeas corpus in order for [his] appeal lawyer [to] file a post conviction motion." *See* ECF No. 3; *see also* Respondent's Decl. ¶ 9; Traverse at 2. The letter did not provide any information about the conviction Petitioner intended to challenge by way of a habeas petition or the grounds on which any such challenge might be based. *See generally* ECF No. 3. Although Petitioner indicates that he sent the letter to the United States District Court for the Northern District of New York in 2017, *see* Pet. at 5; ECF No. 1-1, the record does not reflect that the letter was actually filed, that any tolling was granted, or that Petitioner took any further action with respect to the letter before filing it with his habeas petition on May 19, 2021.

4

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The one-year limitations period, in most cases, accrues on the date that the petitioner's state court conviction becomes final. *See Romero v. Rich*, No. 22-CV-00686, 2022 WL 1568707, at *2 (E.D.N.Y. May 18, 2022). "A judgment becomes final 'after the denial of certiorari by the U.S. Supreme Court or the expiration of time for seeking certiorari.'" *Davis v. Lempke*, 767 F. App'x 151, 152 (2d Cir. 2019) (alterations accepted) (quoting *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001)). When a petitioner does not file a petition for a writ of certiorari seeking review in the United States Supreme Court, a state court conviction becomes final ninety days after the Court of Appeals either denies the petitioner's application for leave to appeal or affirms the conviction. *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003); *Santos v. Keyser*, No. 21-CV-02859, 2022 WL 1092678, at *2 (E.D.N.Y. Apr. 12, 2022) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012)).

### B. Tolling the Statute of Limitations

As relevant here, the one-year statute of limitations can be tolled – *i.e.*, paused – in two ways. First, AEDPA provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [Section 2244(d)]." 28 U.S.C. § 2244(d)(2). For example, a properly filed 440.20 motion tolls AEDPA's limitations period. *See Walker v. Graham*, 955 F. Supp. 2d 92, 100-01 (E.D.N.Y. 2013); *see also Collins v.*

*Ercole*, 667 F.3d 247, 253 (2d Cir. 2012). Importantly though, the filing of a motion does not reset the date from which the one-year statute of limitations begins to run. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Therefore, a petitioner who files a motion after the AEDPA limitations period expires "los[es] the opportunity to invoke [Section 2244(d)(2)'s] provision for tolling the limitations period during the pendency of a state post-conviction motion." *See Doe v. Menefee*, 391 F.3d 147, 154 (2d Cir. 2004); *see also Diaz v. Kelly*, 515 F.3d 149, 152 (2d Cir. 2008) (concluding that, where petitioner filed a 440.10 motion after the one-year statutory period expired, the "subsequent state court collateral attack [did] not toll the federal limitations period"); *Stauffer v. McGinnis*, No. 03-CV-06510, 2008 WL 3835468, at *6 (W.D.N.Y. Aug. 13, 2008) (noting that a 440.20 motion filed after the one-year statutory period expires "has no effect on the timeliness calculation").

Second, even where not statutorily tolled, the statute of limitations may be tolled for equitable reasons. *See Holland v. Florida*, 560 U.S. 631, 645-49 (2010). However, the United States Court of Appeals for the Second Circuit has "clearly stated that the AEDPA limitations period will only be [equitably] tolled in 'rare and exceptional circumstance[s].'" *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (second alteration in original) (quoting *Smith*, 208 F.3d at 17). To qualify for equitable tolling, a habeas petitioner must establish "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Dillon v. Conway*, 642 F.3d 358, 362 (2d Cir. 2011) (quoting *Holland*, 560 U.S. at 649). The petitioner is required to "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."

*Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *see also Jenkins v. Greene*, 630 F.3d 298, 303 (2d Cir. 2010). "The term 'extraordinary' does not refer to the uniqueness of the petitioner's circumstances, 'but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Bolarinwa*, 593 F.3d at 231-32 (quoting *Diaz*, 515 F.3d at 154). "Sufficiently 'severe' obstacles have included extraordinary attorney misconduct, the petitioner's mental illness or hospitalization, prolonged delay by a state court in sending notice of a ruling, and intentional obstruction by prison officials of an inmate's ability to file his petition." *Barrientos v. Lee*, No. 14-CV-03207, 2015 WL 3767238, at *9 (S.D.N.Y. June 17, 2015) (citations omitted).[6]

## II. The Petition is Untimely and Must be Dismissed

### A. The Petition is Time-Barred Under 28 U.S.C. § 2244(d)(1)(A)[7]

Because Petitioner did not file a petition for a writ of certiorari seeking review in the United States Supreme Court, his conviction became final ninety days after the Court of Appeals affirmed his conviction. *See Santos*, 2022 WL 1092678, at *2. With the Court of Appeals affirming Petitioner's conviction on March 28, 2017, *see Smith*, 29 N.Y.3d at 94, 102, the clock began to run for AEDPA statute of limitations purposes – *i.e.*, Petitioner's judgment became

---

[6] The statute of limitations can also be overcome via an "equitable exception." *Rivas v. Fischer*, 687 F.3d 514, 548 (2d Cir. 2012). Specifically, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Because the Petition, even liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), does not assert an actual innocence claim, *see generally* Pet., the equitable exception is inapplicable here.

[7] Because the other accrual events listed in Section 2244(d)(1) are inapplicable in this case, the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review, as provided under Section 2244(d)(1)(A), is the operative date for calculating the statute of limitations here.

7

final – on June 26, 2017.  Petitioner therefore had until June 26, 2018 to petition.  Petitioner did not, however, file the Petition until May 19, 2021, nearly three years after the statute of limitations period had expired.

Because "Section 2244(d)(2) does not toll the AEDPA limitations period if the relevant post-conviction motion was submitted after the AEDPA limitations period already expired," *Then v. Griffin*, No. 17-CV-03681, 2018 WL 2390124, at *4 (E.D.N.Y. May 25, 2018), Petitioner's 440.20 motion, filed on July 24, 2018, did not operate to statutorily toll any portion of the relevant one-year period.  *See, e.g.*, *Diaz*, 515 F.3d at 152.[8]  Further, because Section 2244(d)(2) tolls the statute of limitations only when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," 28 U.S.C. § 2244(d)(2), Petitioner's April 3, 2017 letter to the United States District Court for the Northern District of New York – even assuming that it was originally filed on or around that date – did not statutorily toll the statute of limitations.

Accordingly, the Petition is time-barred under Section 2244(d)(1)(A).

### B. Equitable Tolling is Not Warranted

Petitioner seeks equitable tolling.  Petitioner argues that the statute of limitations should be equitably tolled principally because of issues Petitioner's appellate counsel faced in preparing Petitioner's 440.20 motion – including having to "stud[y] the 2001 case and the Petitioner['s]

---

[8] Petitioner argues in his supplemental letters that because the state court stamp on his 440.20 motion is not fully visible, the 440.20 motion may have been filed in late April or early May of 2018, which would have tolled the AEDPA statute of limitations.  See ECF Nos. 17, 18.  However, the motion is dated July 24, 2018, *see* ECF No. 18 at 4 (reflecting date of July 24, 2018 adjacent to counsel's signature); *see also* Respondent's Decl. at 8, 17, 30, and the record does not reflect that the 440.20 motion was filed at any point before that date.  Petitioner's argument therefore lacks merit, and the Court declines Petitioner's request to issue an order to determine the date that the 440.20 motion was officially stamped by the state court.  *See* ECF No. 18 at 2.

8

2013 trial," "obtain[] an affidavit from [Petitioner's] trial counsel," "track[] down paper work just to use[] as exhibits," and mail legal documents to Petitioner for review – and because it took the appellate court nearly a year to reach a decision on the 440.20 motion. *See generally* Traverse. Petitioner also states that he signed his 440.20 motion on March 30, 2018 and mailed it to his lawyer but that the lawyer did not mail it on time. *See* Traverse at 6. Additionally, Petitioner states that "[b]etween 2017 to 2021 the facility that [Petitioner] was in was recovering from prison escape(s), prison lockdown, riots," and Petitioner "was facing segregation for refusing facility program so [he] c[ould] have time to do legal research and work on [his] case." *See* Traverse at 5.

      Petitioner's arguments in support of the application of equitable tolling are unavailing. The obstacles referenced by Petitioner do not amount to extraordinary circumstances that prevented Petitioner from filing either a habeas petition or his 440.20 motion before the expiration of the applicable one-year limitations period.

      First, even assuming that they indeed existed (and existed during the relevant time period), the prison conditions mentioned by Petitioner – about which Petitioner does not provide detail – do not constitute extraordinary circumstances. *See, e.g.*, *Warren v. Kelly*, 207 F. Supp. 2d 6, 10 (E.D.N.Y. 2002) ("Transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances.") (collecting cases); *Green v. Capri*, No. 17-CV-00392, 2018 WL 2452623, at *4 (N.D.N.Y. May 31, 2018) ("Petitioner's generalized complaints about obstacles to his regular access to the law library, including lockdowns and power outrages on unspecified dates, are precisely the type of difficulties common to prison life that courts have found do not constitute extraordinary circumstances."); *see also Rivera v. United States*, 448 F. App'x 145,

146 (2d Cir. 2011) ("'The usual problems inherent in being incarcerated do not justify equitable tolling.'" (alteration accepted) (quoting *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003))).[9]  And, in any event, Petitioner has not demonstrated that those conditions prevented him from filing either his habeas petition or his 440.20 motion earlier.

Second, the delays that Petitioner indicates appellate counsel faced in preparing the 440.20 motion – *e.g.*, in obtaining an affidavit from Petitioner's trial counsel and in obtaining legal documents to be used as exhibits, *see generally* Traverse – also do not constitute extraordinary circumstances.  *See Stein v. Stallone*, No. 17-CV-00670, 2019 WL 5578236, at *7 (N.D.N.Y. Oct. 29, 2019) (concluding that the alleged withholding of documents and evidence by various agencies and trial counsel, preventing petitioner from offering such materials as proof of petitioner's claims in an appeal or post-conviction action, did not constitute extraordinary circumstances, and noting that "[t]he Second Circuit has set a high bar to deem circumstances sufficiently extraordinary to warrant equitable tolling" (quotation marks omitted)); *Chrysler v. Guiney*, 14 F. Supp. 3d 418, 444 (S.D.N.Y. 2014) (noting that "courts in the Second Circuit have consistently held that the failure to obtain transcripts or other relevant court documents does not constitute an extraordinary circumstance," and collecting cases), *aff'd*, 806 F.3d 104 (2d Cir. 2015); *see also Padilla v. United States*, No. 02-CV-01142, 2002 WL 31571733, at *4 (S.D.N.Y. Nov. 19, 2002).  Moreover, Petitioner has not demonstrated that the delays he describes

---

[9]  In addition to the other prison conditions mentioned by Petitioner, Petitioner urges the Court to consider "quarantine issues" stemming from the Covid-19 pandemic.  *See* Traverse at 5.  But any such "quarantine issues" did not exist during the relevant limitations period – *i.e.*, between June 26, 2017 and June 26, 2018 – and therefore have no bearing on the timeliness analysis.

10

prevented him from filing a timely habeas petition.[10]

Third, to the extent that Petitioner is arguing that his appellate counsel's failure to file Petitioner's 440.20 motion closer in time to when Petitioner signed it warrants the application of equitable tolling, such an argument fails because such attorney conduct does not constitute an extraordinary circumstance. *See Rivas*, 687 F.3d at 539 (explaining that "in order to rise to the level necessary to constitute an 'extraordinary circumstance,' for purposes of tolling § 2254's limitation period, attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship," and concluding on the facts of the case that the attorney's "conduct in failing to file [a] § 440.10 motion sooner" was "a garden variety case of neglect" and was not "so outrageous or incompetent" as to amount to an extraordinary circumstance). The conduct of appellate counsel in filing the 440.20 motion when he did is not "so egregious as to amount to an effective abandonment of the attorney-client relationship." *Id.*; *see also Davis*, 767 F. App'x at 153 (concluding that attorney conduct did not constitute extraordinary circumstance where attorney made mistake in calculating habeas petition deadline but had communicated regularly with petitioner, had researched issues relevant to habeas petition, and ultimately filed habeas petition).[11] Moreover, Petitioner has not demonstrated that his counsel's conduct prevented Petitioner from filing a timely habeas petition. *See, e.g.*, *Lowe v. Bradt*, No. 12-CV-00793, 2014 WL 3490366, at *10 (E.D.N.Y. July 11, 2014) (dismissing

---

[10] Petitioner's argument that the length of time the appellate court took to decide the 440.20 motion supports equitable tolling, *see* Traverse at 5, is unavailing because the entirety of that time period was after the relevant limitations period – *i.e.*, between June 26, 2017 and June 26, 2018.

[11] Petitioner's claim about the timing of the mailing of the 440.20 motion is the only claim in the Traverse that can be construed as alleging any attorney negligence. Notably, the Traverse details significant efforts that appellate counsel took on Petitioner's behalf to prepare the 440.20 motion. *See generally* Traverse.

11

petition as time-barred despite petitioner's claim that his attorney "promised" but failed to file a 440.10 motion, and noting that "it is unclear how such a failure would have prevented [petitioner] from timely filing a habeas petition"); *Tarafa v. Artus*, No. 10-CV-03870, 2013 WL 3789089, at *4 (S.D.N.Y. July 18, 2013) (noting that "the failure of counsel to file an appeal does not prevent a petitioner from pursuing habeas relief"); *Craig v. Connolly*, No. 15-CV-00384, 2016 WL 7993378, at *3 (N.D.N.Y. Dec. 7, 2016) (noting that "[e]ven assuming that petitioner's attorney failed to file the notice of appeal, this would bear no causal connection to petitioner's independent failure to timely file a habeas petition"), *report and recommendation adopted*, 2017 WL 375662 (N.D.N.Y. Jan. 26, 2017).[12]

Because the record does not reflect that any extraordinary circumstance prevented Petitioner from timely filing a habeas petition or a 440.20 motion that would have tolled the statute of limitations, the Court declines to apply equitable tolling.

## CONCLUSION

The Petition was not filed within the one-year statute of limitations period provided by AEDPA, and Petitioner is not entitled to statutory or equitable tolling.

For the foregoing reasons, Respondent's Motion to Dismiss the Petition, ECF No. 13, is GRANTED and the Petition, ECF No. 1, is DISMISSED as untimely.

The Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). Petitioner, however, has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253(c).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order

---

[12] Petitioner argues that he has "taken diligent action," pointing to his 2017 letter requesting tolling. *See* Traverse at 2; *see also* ECF No. 3. Plaintiff has not, however, demonstrated that any extraordinary circumstance prevented him from filing a timely habeas petition.

12

would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment, close this case, and mail a copy of this Order to Petitioner.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated:  July 12, 2022
　　　　Brooklyn, New York